UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RONNIE EDWARDS, | Case No. 2:19-cv-01268-GMN-VCF |
| Plaintiff, | SCREENING ORDER |
| v. | |
| BENJAMIN ESTILL, *et al.*, | |
| Defendants. | |

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983, and has filed an application to proceed *in forma pauperis* and a motion for appointment of counsel. (ECF Nos. 1, 1-1, 5.) The matter of the filing fee and Plaintiff's motion for appointment of counsel will be temporarily deferred. The Court now screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A and addresses Plaintiff's motion.

**I.     SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails

to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining

2

1   whether a complaint states a plausible claim for relief . . . [is] a context-specific task that

2   requires the reviewing court to draw on its judicial experience and common sense." *Id.*

3        Finally, all or part of a complaint filed by an incarcerated person may be dismissed

4   *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This

5   includes claims based on legal conclusions that are untenable (e.g., claims against

6   defendants who are immune from suit or claims of infringement of a legal interest which

7   clearly does not exist), as well as claims based on fanciful factual allegations (e.g.,

8   fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989);

9   *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

10  **II.   SCREENING OF COMPLAINT**

11       In the complaint, Plaintiff sues multiple defendants for events that took place while

12  Plaintiff was incarcerated at High Desert State Prison ("HDSP").   (ECF No. 1-1 at 1.)

13  Plaintiff sues Defendants Benjamin Estill, Guy Brown, James Dzurenda, Jennifer Nash,

14  Salvea, Tobin, H. Wickham, Brian Williams, and J. Zalaya.   (*Id.* at 1-5.)   Plaintiff alleges

15  28 counts and seeks declaratory and monetary.   (*Id.* at 5-68.)   Some of Plaintiff's claims

16  involve similar facts or legal analysis.   The Court will group together claims that involve

17  similar facts or legal analysis and consider them in turn.

18       **A.  Counts I and III**

19       The complaint alleges the following: In either September or October 2016, Plaintiff

20  told Estill that Estill was racially profiling black inmates for searches.   (ECF No. 1-1 at 6.)

21  Estill asked for Plaintiff's name and told Plaintiff that Estill would show him what racial

22  profiling was.   (*Id.*)   Estill searched Plaintiff both prior to and after his scheduled law library

23  appointment.   (*Id.*)

24       In November 2016, Estill singled Plaintiff out for a search before and after he

25  entered the dining hall and referenced racial profiling during both searches.   (*Id.*)   Estill

26  asked Plaintiff what his housing unit was, and, after mealtime ended, Estill searched

27  Plaintiff's cell and both of his neighbors' cells.   (*Id.*)   Estill then searched Plaintiff's cell

28  again and strip searched both Plaintiff and his cellmate.   (*Id.*)   Plaintiff then told Estill that

1    his actions amounted to harassment and that Plaintiff would file a grievance over the

2    issue.  (*Id.*)  Estill responded that Plaintiff should shut up before Estill found a knife or

3    drugs on Plaintiff and began grinning.  (*Id.*)

4         Plaintiff spoke to other inmates about the issue, and they told him that Estill was

5    out of control.  (*Id.* at 6-7.)  On November 14, Plaintiff wrote a letter to Nash seeking her

6    help with the issue.  (*Id.* at 7.)  On November 22, Plaintiff wrote two kites stating that Estill

7    was threatening him because Plaintiff told Estill that he would file a grievance.  (*Id.*)

8    Salvea read the kites and signed them.  (*Id.*)  Plaintiff asked Salvea to notify a sergeant

9    of Estill's behavior.  (*Id.*)  Salvea refused to notify a sergeant, but he warned Plaintiff to

10   be careful.  (*Id.*)  Plaintiff then sent the kites to Nash and the law library supervisor Mr.

11   Graham.  (*Id.*)

12        On December 18, 2016, Plaintiff authored his informal grievance about Estill's

13   behavior.  (*Id.*)  On December 22, 2017, Estill entered Plaintiff's cell to conduct a search.

14   (*Id.*)  Plaintiff asked Estill whether he had a camera and asked Estill to call a sergeant.

15   (*Id.*)  Estill asked whether Plaintiff was refusing the search, and Plaintiff said no and

16   allowed the search to proceed.  (*Id.*)  As Plaintiff was leaving the cell, Estill said, "today is

17   your unlucky day snitch."  (*Id.* at 7-8.)  Estill then conducted an unreasonable pat-down,

18   metal-detector, and strip search of Plaintiff.  (*Id.* at 8.)  Estill then planted and found a

19   knife in Plaintiff's room and filed a notice of charges against Plaintiff and his cellmate.

20   (*Id.*)  As a result of the notice of charges, Plaintiff was removed from level two status and

21   placed on red-tag status.  (*Id.*)

22        Based on these allegations, Plaintiff claims his First Amendment rights were

23   violation (Count I).  (*Id.* at 6.)  The Court construes this as a claim of First Amendment

24   retaliation.  In Count III, Plaintiff states that he is bringing a state law tort claim.  (*Id.* at

25   11.)  However, Plaintiff then alleges that Estill violated Plaintiff's First, Fourth, Eighth, and

26   Fourteenth Amendment rights, as well as Article 1, Sections 10[1] and 18 of the Nevada

27
28   [1] Plaintiff lists Article 1, Section 10 of the Nevada Constitution, which protects the right of
     individuals to assemble, instruct their representatives, and petition the legislature for
     grievances.  However, based on the context of the complaint, it appears that Plaintiff

4

constitution based on the conduct alleged in Count I.  (*Id.*)  None of the allegations in Count I appears to give rise to a claim under the Eighth Amendment or Fourteenth Amendment, and the Court dismisses these claims without prejudice.  The Court will consider Plaintiff's other claims in turn.

### 1. First Amendment and Article 1, Section 9 of the Nevada Constitution

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).  "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."  *Id.*

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Id.* at 567-68.  Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.  *Id.* at 568-69.  A threat to file a grievance constitutes protected speech.  *See Garcia v. Strayhorn*, No. 13-CV-807-BEN KSC, 2014 WL 4385410, at *6 (S.D. Cal. Sept. 3, 2014) (reviewing case law indicating that an

---

intended to bring a claim under Article 1, Section 9 of the Nevada Constitution, which protects freedom of speech.  *See Univ. & Cmty. Coll. Sys. of Nevada v. Nevadans for Sound Gov't*, 120 Nev. 712, 722 (2004) (noting that Article 1, Section 9 of the Nevada Constitution protects the right of the people to engage in expressive activities in Nevada.)  The Nevada Supreme Court has held that Article 1, Section 9 of the Nevada Constitution provides no greater protection than the First Amendment.  (*Id.*)  Plaintiff does not argue that the protections provided under the First Amendment and Article 1, Section 9 of the Nevada Constitution differ, and the for purposes of screening, the Court will assume that the protections are the same, and analyze these claims under First Amendment precedents.

inmate's threat to file a prison grievance constitutes protected speech but noting case law which states that verbal challenges to prison officials which are argumentative, confrontational, and disrespectful are not protected by the First Amendment).

To state a valid § 1983 claim against a supervisor, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). To plead a claim against a supervisor for free speech violations under the First Amendment, a plaintiff need only allege "facts that demonstrate an immediate supervisor knew about the subordinate violating another's federal constitutional right to free speech, and acquiescence in that violation." *OSU Student All. v. Ray*, 699 F.3d 1053, 1075 (9th Cir. 2012).

The Court finds that Plaintiff states colorable claims under the First Amendment and Article 1, Section 9 of the Nevada Constitution. The Court liberally construes the complaint as alleging that Plaintiff complained to Estill that Estill was racially profiling black inmates for searches. Estill then began harassing Plaintiff. Plaintiff told Estill that he would file a grievance about the issue, and Estill responded by telling Plaintiff to shut up before Estill decided to "find" a knife on Plaintiff.

Plaintiff informed both Salvea and Nash about Estill's behavior, but neither acted to prevent Estill from retaliating against Plaintiff. Estill then planted and found a knife in Plaintiff's cell, resulting in serious disciplinary consequences for Plaintiff. These allegations are sufficient to state colorable claims under the First Amendment and Article 1, Section 9 of the Nevada Constitution on screening. These claims will proceed against Estill, Salvea, and Nash.

## 2. Fourth Amendment and Article 1, Section 18 of the Nevada Constitution

The Fourth Amendment and Article 1, Section 18 of the Nevada Constitution both prohibit unreasonable searches and seizures.[2] The Fourth Amendment provides, in part,

---

[2] "Article 1, Section 18 of the Nevada Constitution uses almost the same words as the Fourth Amendment does to prohibit unreasonable searches and seizures." *Cortes v. State*, 127 Nev. 505, 514 (2011). Plaintiff does not argue that the protections provided

6

that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Supreme Court has held that prisoners have no Fourth Amendment right to privacy in their cells and, thus, the prohibition on unreasonable searches does not apply in prison cells. *Hudson v. Palmer*, 468 U.S. 517, 525-26, 530 (1984) (holding that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions").

Generally, strip searches do not violate the Fourth Amendment rights of prisoners. *See Michenfelder v. Sumner*, 860 F.2d 328, 332-33 (9th Cir. 1988). However, strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may be unconstitutional. *Id.* at 332.

The Court finds that Plaintiff states colorable claims under the Fourth Amendment and Article 1, Section 18 of the Nevada Constitution. The Court liberally construes the complaint as alleging that Estill strip searched Plaintiff on two separate occasions. Neither strip search was necessary nor related to any penological interest. Instead, the strip searches were retaliatory and vindictive. These allegations are sufficient to state colorable claims under the Fourth Amendment and Article 1, Section 18 of the Nevada Constitution on screening. These claims will proceed against Estill.

**B. Counts II, III, IV, V, VI, XI, XII, XVI, XVIII, IXX, XX, XXI, XXII, XXV, XXVIII**

In these counts, Plaintiff brings state law tort claims related to his other counts. Under Nevada law, the State of Nevada has generally waived sovereign immunity for state tort actions in state court. Nev. Rev. Stat. § 41.031(1). In order to sue the State of Nevada or a state employee, the plaintiff is required to sue the State of Nevada or appropriate political subdivision. Nev. Rev. Stat. § 41.031(2) ("In any action against the

under the Fourth Amendment and Article 1, Section 18 of the Nevada Constitution differ, and the for purposes of screening, the Court will assume that the protections are the same, and analyze these claims under Fourth Amendment precedents.

1   State of Nevada, the action must be brought in the name of the State of Nevada on
2   relation of the particular department, commission, board or other agency of the State
3   whose actions are the basis for the suit.").

4       In *Craig v. Donnelly*, the Nevada Court of Appeals addressed whether a plaintiff
5   had to name the State as party in a state court case and held that "while a plaintiff must
6   name the State as a party to any state tort claims in order to comply with NRS 41.031
7   and NRS 41.0337, this statutory requirement does not apply to 42 U.S.C. § 1983 claims,
8   even when brought in the same complaint as a plaintiff's state tort claims. 439 P.3d 413
9   (Nev. App. 2019). "Indeed, the State cannot be named as a party to a plaintiff's § 1983
10  civil rights claims." *Id.* at 414.

11      With respect to federal court cases, the State of Nevada does not waive its
12  sovereign immunity. Nev. Rev. Stat. § 41.031(3). Generally, the State of Nevada and
13  arms of the state cannot be sued in federal court. *See O'Connor v. State of Nev.*, 686
14  F.2d 749, 750 (9th Cir. 1982) (holding that "Nevada has explicitly refused to waive its
15  immunity to suit under the eleventh amendment . . . The Supreme Court has made it clear
16  that section 1983 does not constitute an abrogation of the eleventh amendment immunity
17  of the states"). In *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129 (9th Cir.
18  2006), the Ninth Circuit held that 28 U.S.C. § 1367 does not abrogate state sovereign
19  immunity for supplemental state law claims. *Id.* at 1133-34. Although the State of Nevada
20  may consent to federal court jurisdiction for state law claims through removal, this is not
21  a removed case. *See Lapides v. Bd. of Univ. Sys. Of Ga.*, 535 U.S. 613 (2002) (holding
22  that state's removal of suit to federal court constitutes waiver of its sovereign immunity).

23      For this reason, the Court finds that Plaintiff must raise his state law claims in state
24  court and dismisses those claims without prejudice. *See Hirst v. Gertzen*, 676 F.2d 1252,
25  1264 (9th Cir. 1982) (holding that, where Montana law deemed governmental entities
26  indispensable parties in a state tort claim against a state employee, the federal court had
27  no supplemental jurisdiction over the state tort claim if it had no jurisdiction over the
28  indispensable party).

### C. Counts VII and IX

In these counts, Plaintiff alleges that on January 25, 2017, Plaintiff had a disciplinary hearing before Brown based on Estill's false notice of charges. (ECF No. 1-1 at 22.) Plaintiff asked Brown whether he knew about Plaintiff filing kites stating that Estill planned to frame him for possessing a knife. (*Id.*) Brown called Nash to determine the existence of the kites. (*Id.*) Nash appears to have acknowledge the existence of the kite, but she did not appear to place any significant on it. (*Id.*)

Two inmates testified that prior to searching Plaintiff's cell Estill stated, "this is your unlucky day snitch." (*Id.* at 23.) There was no evidence that Plaintiff possessed the knife other than Estill's false report. (*Id.* at 24.) Nevertheless, Brown found Plaintiff guilty of possessing the knife. (*Id.*) Plaintiff appealed the disciplinary finding, and Williams and Wickham upheld the finding of guilt. (*Id.* at 25-29.)

As a result of the notice of charges and disciplinary hearing, Plaintiff was placed in disciplinary segregation for 120 days. (*Id.* at 17.) While in disciplinary segregation, Plaintiff lost numerous privileges such as daily telephone time and showers, tier time, yard time, the ability to attend the law library and religious services, and the ability to socialize with other inmates on a daily basis. (*Id.* at 17-18.) Plaintiff's cell was directly on top of a room that had been quarantined because an inmate had smeared feces all over the room and into the vent. (*Id.* at 18.) Plaintiff's room shared a vent with that room, and Plaintiff's room smelled of feces. (*Id.*) The unit porter and other inmates also splashed feces under Plaintiff's door or threw feces at Plaintiff. (*Id.*) Other inmates also beat on their walls all day and night. (*Id.*) Plaintiff also lost approximately 84 days of statutory good time credits as a result of being placed in segregation. (*Id.*)

Based on these allegations, Plaintiff alleges that his Eighth (Count VII) and Fourteenth Amendment (Count IX) rights were violated.[3] (*Id.* at 17, 22.) The Court will consider these claims in turn. (*Id.*)

---

[3] Count VII states that Plaintiff's Eighth and Fourteenth Amendment rights were violated, but the allegations in Count VII focus on the conditions of Plaintiff's confinement during his segregation and don't appear to raise any Fourteenth Amendment claim different from

9

### 1.  Eighth Amendment

The Court construes Plaintiff's Eighth Amendment claim as a conditions of confinement claim.  The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).   When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment.  *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981).  As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition.  *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

The Court finds that Plaintiff fails to state a colorable conditions of confinement claim.  Plaintiff first alleges that he lost several privileges when he was placed in solitary confinement.  The loss of these privileges does not give rise to a claim that Plaintiff was denied adequate shelter, food, clothing, sanitation, medical care, and personal safety. Plaintiff also alleges that he was subjected to the smells of feces, the noise of inmates pounding on the walls, and inmates throwing feces on him or in his cell.  Even if these circumstances could give rise to a conditions of confinement claim, Plaintiff does not identify any Defendant who knew about these conditions and was deliberately indifferent

the claim raised in Count IX.  A such, the Court dismisses Plaintiff's Fourteenth Amendment claim in Count VII without prejudice.

1  to the conditions.  As such, Plaintiff fails to state a colorable conditions of confinement

2  claim, and the Court dismisses this claim without prejudice.

3  　　　　The Court notes that it appears that Plaintiff may have detailed the negative

4  conditions of his solitary confinement in order to demonstrate that he faced an atypical

5  and significant hardship in order to support a Fourteenth Amendment due process claim.

6  To the extent that these conditions were meant to support Plaintiff's due process claim,

7  the Court will consider them in analyzing his claim under the Fourteenth Amendment.

8  　　　　　　　　　　　　**2.  Fourteenth Amendment**

9  　　　　In order to state a cause of action for deprivation of procedural due process, a

10  plaintiff must first establish the existence of a liberty interest for which the protection is

11  sought.  *Sandin v. Conner*, 515 U.S. 472, 487 (1995).  In *Sandin*, the Supreme Court held

12  that a prisoner has a liberty interest when confinement "imposes [an] atypical and

13  significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.*

14  at 484.  In *Sandin*, the Supreme Court focused on three factors in determining that the

15  plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary

16  segregation was essentially the same as discretionary forms of segregation; (2) a

17  comparison between the plaintiff's confinement and conditions in the general population

18  showed that the plaintiff suffered no "major disruption in his environment;" and (3) the

19  length of the plaintiff's sentence was not affected.  *Id.* at 486-87.

20  　　　　When a protected liberty interest exists and a prisoner faces disciplinary charges,

21  prison officials must provide the prisoner with (1) a written statement at least twenty-four

22  hours before the disciplinary hearing that includes the charges, a description of the

23  evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an

24  opportunity to present documentary evidence and call witnesses, unless calling witnesses

25  would interfere with institutional security; and (3) legal assistance where the charges are

26  complex or the inmate is illiterate.  *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

27  　　　　"When prison officials limit an inmate's efforts to defend himself, they must have a

28  legitimate penological reason."  *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992).  An

inmate's right to present witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985). Jail officials "must make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003). Despite this, an inmate has no right to cross-examine or confront witnesses in prison disciplinary hearings. *See Wolff*, 418 U.S. at 567-68.

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). However, this standard does not apply when a prisoner alleges that a prison guard's report is false. *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997).

The Court finds that Plaintiff states a colorable due process claim. For purposes of screening, Plaintiff's allegation that he was placed in segregation for 120 days and his allegations about the conditions in segregation are sufficient to support that Plaintiff had a liberty interest in his disciplinary hearing. Plaintiff alleges that the only evidence against him was Estill's false report, which Estill fabricated to retaliate against Plaintiff for his grievances. As such, the some evidence standard does not apply, and Plaintiff's states a colorable claim that his due process rights were violated. This claim will proceed against Defendants Estill, Brown, Williams and Wickham.

**D. Counts VIII, XIII, XXIII, XXVI**

In Counts VIII, XIII, XXIII, and XXVI Plaintiff brings claims based on the denials of various grievances that he filed over Estill's retaliatory conduct. (ECF No. 1-1 at 19-20, 34-36, 49-52, 56-58.) In each of these claims, Plaintiff alleges that the individuals who denied his grievances did so without doing a proper investigation of Plaintiff's allegations.

///

///

1    (*Id.*)  Based on these allegations, Plaintiff claims that various Defendants[4] violated

2    Plaintiff's due process rights during the administrative grievance process.  (*Id.*)

3          Prisoners have no stand-alone due process rights related to the administrative

4    grievance process.  *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that

5    a state's unpublished policy statements establishing a grievance procedure do not create

6    a constitutionally protected liberty interest); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th

7    Cir. 2003) (holding that there is no liberty interest in the processing of appeals because

8    there is no liberty interest entitling inmates to a specific grievance process).

9          The Court finds that Plaintiff fails to state a colorable due process claim based on

10   the allegations that the Defendants failed to adequately investigate his grievance.  Based

11   on the law, Plaintiff does not have a right to have prison officials process or investigate

12   an inmate grievance in any specific way.  As such, the Court dismisses all of Plaintiff's

13   due process claims based on the denial of his grievances with prejudice, as amendment

14   would be futile.

15   **E.  Count X and XII**

16          In Count X, Plaintiff alleges that on December 30, 2016, Estill called Plaintiff a

17   snitch in front of all the inmates housed in unit 4D.  (ECF No. 1-1 at 30.)  Calling Plaintiff

18   a snitch in front of the other inmates put Plaintiff's life in jeopardy.  (*Id.*)  Estill called

19   Plaintiff a snitch in the hope that it would silence Plaintiff and chill his resolve to continue

20   pursuing grievances against Estill.  Based on these allegations, Plaintiff brings a First

21   Amendment retaliation claim (Count X) and a claim under Article 1, Section 10 of the

22   Nevada Constitution (Count XII).[5]

23   ///

24   ///

25

26   ――――――――――――――
[4] Plaintiff brings claims against Tobin, Williams, and Wickham in Counts VIII, XIII, and XXIII, and claims against Zalaya, Williams, and Wickham in Count XXVI

27   [5] As with Plaintiff's claim under Article 1, Section 10 of the Nevada Constitution in Section

28   II(A), the Court construes this as a claim under Article 1, Section 9 of the Nevada Constitution and will analyze the claim together with Plaintiff First Amendment retaliation claim.

The Court finds that Plaintiff states colorable claims under the First Amendment Article 1, Section 9 of the Nevada Constitution.[6]   The Court liberally construes the complaint as alleging that in retaliation for Plaintiff's grievances, Estill called Plaintiff a snitch in front of all of the other inmates in his cell block.  Estill knew that calling Plaintiff a snitch in front of other inmates could put Plaintiff's life in danger because other inmates might retaliate against Plaintiff for being snitch.  These allegations are sufficient to state a colorable claim on screening.  This claim will proceed against Defendant Estill.

### F.  Counts XIV, XV, XVII

In Count XIV, Plaintiff alleges that on March 10, 2017, Estill was transporting inmates to and from the shower area.  (ECF No. 1-1 at 37.)  Plaintiff commented to another inmate that Estill does not like Blacks or Muslims.[7]  (*Id.*)  Estill overheard the comment and responded that he did not like snitches.  (*Id.*)  At that point, other inmates started yelling that all snitches must die.  (*Id.*)  Estill asked for an emergency grievance to file about Estill.  (*Id.*)  Estill brought him the grievances and said, "here you go nigger."  (*Id.*)  Shortly thereafter, Estill came over Plaintiff's cell's intercom and said, you're a snitch you nigger."  (*Id.*)  Plaintiff responded that Estill should get a life, and Estill replied, "I hate niggers."  (*Id.*)

Approximately 30 minutes later, Estill approached Plaintiff's cell and instructed him to "cuff up."  (*Id.* at 38.)  When Plaintiff asked why, Estill responded "to teach you not to file grievances on me."  Estill then slammed the handcuffs so hard on Plaintiff's left wrist that Plaintiff screamed and pain.  (*Id.*)  Estill then put the handcuffs on Plaintiff's right wrist so tightly that it cut into Plaintiff's flesh and grinded against Plaintiff's bone.  (*Id.*)

Estill brought Plaintiff to the shower area and conducted a strip search.  (*Id.*)  Estill then went to Plaintiff's cell, trashed Plaintiff's cell, and carried away a trash bag full of

---

[6] The standard for stating a First Amendment retaliation claim is discussed in Section II(A)(1).

[7] The Court notes that the complaint states that Plaintiff comments that "Estill does like Blacks or Muslims."  (ECF No. 1-1 at 37.)  Based on the context of the complaint, the Court believes that Plaintiff intended to write Estill does not like Blacks or Muslims.

1   Plaintiff's papers.  (*Id.*)  When Plaintiff asked for an inventory list of what was taken, Estill

2   simply responded that it was contraband.  (*Id.*)  Plaintiff was then placed back in his cell

3   and the food flap was opened so that Estill could take off Plaintiff's handcuffs.  (*Id.*)  Estill

4   yanked Plaintiff's handcuff so hard that Plaintiff's back slammed into the door.  (*Id.*)  Estill

5   then bent Plaintiff's wrists upwards causing Plaintiff to feel a shooting pain up his arms.

6   (*Id.*)

7        Based on these allegations, Plaintiff brings a First Amendment retaliation claim

8   (Count XIV), an excessive use of force claim (Count XV), and an equal protection claim

9   (Count XVII).  (*Id.* at 37-42.)  The Court will consider these claims in turn.

10                     **1.  First Amendment Retaliation**

11        The Court finds that Plaintiff states a colorable First Amendment retaliation claim.[8]

12   The Court liberally construes the complaint as alleging that in retaliation for Plaintiff's

13   various grievances against Estill, Estill conducted an unnecessary search of Plaintiff and

14   his cell.  Estill used excessive force in placing handcuffs on Plaintiff and in taking them

15   off, and Estill improperly confiscated Plaintiff's paperwork.   These allegations are

16   sufficient to state a colorable claim on screening.   This claim will proceed against

17   Defendant Estill.

18                        **2.  Excessive Force**

19        When a prison official stands accused of using excessive physical force in violation

20   of the cruel and unusual punishment clause of the Eighth Amendment, the question turns

21   on whether force was applied in a good-faith effort to maintain or restore discipline, or

22   maliciously and sadistically for the purpose of causing harm.  *Hudson v. McMillian*, 503

23   U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  In determining

24   whether the use of force was wanton and unnecessary, it may also be proper to consider

25   factors such as the need for application of force, the relationship between that need and

26   the amount of force used, the threat reasonably perceived by the responsible officials,

27   

28   [8] The standard for stating a First Amendment retaliation claim is discussed in Section
    II(A)(1).

and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10.

The Court finds that Plaintiff states a colorable excessive use of force claim. The Court liberally construes the complaint as alleging that Estill deliberately put handcuffs on Plaintiff with extreme force, cutting into Plaintiff's flesh and grinding against the bones of his wrists. When removing the handcuffs, Estill forcefully yanked on the cuffs, again causing Plaintiff significant pain. Estill's actions were not a good-faith effort to maintain or restore discipline, but rather were malicious and sadistic and done for the purpose of causing Plaintiff harm in retaliation for Plaintiff's grievances.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

When analyzing a discrimination claim under the Fourteenth Amendment, the courts "must first determine the appropriate level of scrutiny to be applied. If the rule disadvantages a suspect class or impinges upon a fundamental right, the court will examine it by applying a strict scrutiny standard. If no such suspect class or fundamental rights are involved, the conduct or rule must be analyzed under a rational basis test." *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990).

16

The Court finds that Plaintiff states a colorable equal protection claim.  The Court liberally construes the complaint as alleging that Estill has a history of racially profiling black inmates for excessive searches.  Estill told Plaintiff that he "hate[s] niggers."  Estill used excessive force handcuffing Plaintiff and conducted an improper search of Plaintiff's cell.  For purposes of screening, these allegations give rise to a colorable inference that Estill acted with the intent and purpose to discriminate against Plaintiff based upon Plaintiff's race.  These allegations are sufficient to state a colorable claim on screening.  This claim will proceed against Defendant Estill.

## G. XXIV

In Count XXIV, Plaintiff alleges that on December 31, 2017, Estill searched Plaintiff's room while Plaintiff was out in the yard. (ECF No. 1-1 at 53.)  When Plaintiff returned to his cell, he noticed that one of his legal boxes was torn in two pieces.  (*Id.*) After cleaning up his cell, Plaintiff realized that he was missing a manila envelope that contained brass slips and monthly statements.  (*Id.*)  Plaintiff alleges that Estill conducted this search and damaged or took Plaintiff's property in retaliation for Plaintiff's grievances against him.  (*Id.* at 54).  Based on these allegations, Plaintiff brings a claim of First Amendment retaliation.  (*Id.* at 53.)

The Court finds that Plaintiff states a colorable First Amendment retaliation claim.[9] The Court liberally construes the complaint as alleging that Estill conducted a search of Plaintiff's cell while Plaintiff was out for yard time.  In retaliation for Plaintiff's grievances against him, Estill destroyed plaintiff's property.  These allegations are sufficient to state a colorable claim on screening.  This claim will proceed against Defendant Estill.

## H. Count XXVII

In Count XXVII, Plaintiff alleges that on March 4, 2018, Estill searched Plaintiff's room while Plaintiff was on yard time.  (ECF No. 1-1 at 59.)  Estill damaged Plaintiff's lamp and beard trimmers and confiscated some of Plaintiff's personal pictures and letters.

---

[9] The standard for stating a First Amendment retaliation claim is discussed in Section II(A)(1).

1  (*Id.*)  Based on these allegations, Plaintiff brings a claim of First Amendment retaliation.
2  (*Id.*)

3          The Court finds that Plaintiff states a colorable First Amendment retaliation claim.[10]
4  The Court liberally construes the complaint as alleging that Estill conducted a search of
5  Plaintiff's cell while Plaintiff was out for yard time.  In retaliation for Plaintiff's grievances
6  against him, Estill destroyed some of Plaintiff's property and improperly confiscated some
7  of Plaintiff's personal pictures and letters.  These allegations are sufficient to state a
8  colorable claim on screening.  This claim will proceed against Defendant Estill.

9          **I.   Defendants Dzurenda, Tobin, and Zalaya**

10         The Court has not found any colorable claims against Defendants Dzurenda,
11 Tobin, and Zalaya.  As such, the Court dismisses them from the entirety of the complaint
12 without prejudice.

13 **III.   CONCLUSION**

14          For the foregoing reasons, it is ordered that a decision on the application to
15 proceed *in forma pauperis* (ECF No. 1) is deferred.

16         It is further ordered that the Clerk of the Court file Plaintiff's complaint (ECF No. 1-
17 1) and send Plaintiff a courtesy copy of the complaint.

18         It is further ordered Plaintiff's First Amendment retaliation claim in Count I and his
19 corresponding claim under Article 1, Section 9 of the Nevada Constitution in Count III will
20 proceed against will proceed against Estill, Salvea, and Nash.

21         It is further ordered Plaintiff's Fourth Amendment claim in Count III and his
22 corresponding claim under Article 1, Section 18 of the Nevada Constitution in Count III
23 will proceed against will proceed against Estill.

24         It is further ordered that Plaintiff's Eighth and Fourteenth Amendment claims in
25 Count III are dismissed without prejudice.

26 ///

27 _____

28 [10] The standard for stating a First Amendment retaliation claim is discussed in Section
II(A)(1).

It is further ordered that Plaintiff's state law tort claims in Counts II, III, IV, V, VI, XI, XII, XVI, XVIII, IXX, XX, XXI, XXII, XXV, and XXVIII are dismissed without prejudice.

It is further ordered that Plaintiff's Eighth Amendment claim in Count VII is dismissed without prejudice.

It is further ordered that Plaintiff's Fourteenth Amendment claim in Count IX will proceed against Defendants Estill, Brown, Williams and Wickham.

It is further ordered that Plaintiff's due process claims based on the denial of his grievances in Counts VIII, XIII, XXIII, and XXVI are dismissed with prejudice, as amendment would be futile.

It is further ordered that Plaintiff's First Amendment retaliation claim in Count X and his corresponding claim under Article 1, Section 9 of the Nevada Constitution in Count XII will proceed against will proceed against Estill.

It is further ordered that Plaintiff's First Amendment retaliation claim in Count XIV will proceed against will proceed against Estill.

It is further ordered that Plaintiff's excessive use of force claim in Count XV will proceed against will proceed against Estill.

It is further ordered that Plaintiff's excessive use of force claim in Count XVII will proceed against will proceed against Estill.

It is further ordered that Plaintiff's First Amendment retaliation claim in Count XXIV will proceed against will proceed against Estill.

It is further ordered that Plaintiff's First Amendment retaliation claim in Count XXVII will proceed against will proceed against Estill.

It is further ordered that Defendants Dzurenda, Tobin, and Zalaya are dismissed from the entirety of the case without prejudice.

For the foregoing reasons, it is ordered that a decision on Plaintiff's motion for appointment of counsel (ECF No. 5) is deferred.

It is further ordered that, given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for 90 days to allow Plaintiff and Defendant(s)

an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

It is further ordered that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Plaintiff will be required to pay the full $350.00 filing fee. This fee cannot be waived. If Plaintiff is allowed to proceed in forma pauperis, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed in forma pauperis, the $350.00 will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" on or before 21 days from the date of this order. The responding party will have seven days to file a response. No reply may be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

The Clerk of Court is directed to electronically serve a copy of this order, and a copy of Plaintiff's Complaint, on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Defendants for the purpose of settlement. No defenses or objections, including lack of service, will be waived as a result of the filing of the limited notice of appearance.

DATED THIS 26 day of October 2020.

_____
Gloria M. Navarro, Judge
United States District Court

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

RONNIE EDWARDS,

                            Plaintiff,

      v.

BENJAMIN ESTILL, *et al.*,

                         Defendants.

Case No. 2:19-cv-01268-GMN-VCF

REPORT OF ATTORNEY GENERAL
RE: RESULTS OF 90-DAY STAY

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

///

///

///

///

///

///

///

///

///

///

22

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

_____  A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

_____  A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____  No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case.  (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____  No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____  No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____  None of the above five statements describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

\* \* \* \* \*

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____  The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

23

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____          _____
                          Print                                    Signature

Address:       _____          Phone:

               _____          _____

                                               Email:

                                               _____